**HEARING DATE:** **TUESDAY, JANUARY 18, 2022**
**HEARING TIME:** **2:00 P.M.**
**LOCATION:** **TELEPHONIC HEARING**
**RESPONSE DUE:** **TUESDAY, JANUARY 18, 2022 AT 10:00 A.M**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re

PARTNERS, A TASTEFUL CHOICE COMPANY

Debtor.

No. 22-10060-TWD

DECLARATION OF CARA FIGGINS IN
SUPPORT OF FIRST DAY MOTIONS

Cara Figgins declares as follows:

1. I am the President of Partners, a Tasteful Choice Company ("Partners" or "Debtor"), debtor-in-possession herein, debtor-in-possession herein. I make this Declaration in support of the Debtors' Emergency Motions as follows ("Emergency Motions"):

    a. Emergency Motion For An Interim Order (1) Authorizing Use Of Cash Collateral and Granting Adequate Protection Pursuant To Sections 361 And 363 of the Bankruptcy Code; And (2) Setting Final Hearing;

    b. Emergency Motion For Authority To Pay Prepetition Payroll and Commissions, Employee Benefits, And Related Expenses;

    c. Emergency Motion For An Order Authorizing Debtor To Continue Use of Existing Cash Management System and Prepetition Business Banking Accounts and Checks; and

DECLARATION OF CARA FIGGINS – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

d.    Emergency Motion For An Order Approving Adequate
      Assurance to Utilities.

Capitalized terms not defined in this Declaration have their meanings as set forth in the relevant Emergency Motion.

**History and Business Operations**

2.    Partners is a Washington corporation specializing in manufacturing, warehousing, distribution, and selling of bakery products, including crackers, cookies, and other baked snacks. Partners was founded in 1992 by my mother, Marian Harris. From its inception until July 2017, Partners was wholly family-owned by my mother (who is recently deceased), my brother Greg Maestretti, Vice President of Operations, and myself as President. My mother founded the company to respond to a need for a better cracker option to serve with her soups at her two Seattle-area restaurants, including The Bakery, which is now Grand Central Baking Co. In 2019, Seattle Business Magazine awarded Partners its top Gold Family Business Award for midsize companies.

3.    Over the past 29 years, demand for Partners' products continued to grow and, in turn, the company continually outgrew one production facility after the other. Today, Partners has approximately 106 employees and operates a state-of-the-art, eco-friendly, 150,000-square-foot bakery near Seattle. The Company has developed multiple brands featuring a wide variety of non-GMO, gourmet artisan crackers, cookies, and other baked goods, including organic, low-fat, and allergy-friendly options. All are free of high fructose corn syrup, preservatives, and hydrogenated oils. Partners' products are available in all 50 states and around the world. Partners does business in diversified channels of trade including retail grocery, bulk food service, travel, in store bakery/deli and as component in gift baskets.

DECLARATION OF CARA FIGGINS – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dm15eh01kr

4.      As testament to the quality of and demand for its products, Partners enjoys strong, long-standing customer relationships, which include Alaska Airlines (since 2010), Costco (since 2004), United Airlines, Delta Airlines, Amazon, and Whole Foods, to name a few.  In addition to major retailers across the United States, Partners locally sells to QFC, Fred Meyer, Metropolitan Market, Safeway and Thriftways.  Partners also maintains a significant co-manufacture and private label business.

5.      Partners has financed its operations through two lenders, Wells Fargo Bank and Premium Brands Operating Limited Partnership.

**Historical Financial Performance**

6.      By 2013, Partners' revenue surpassed $10 million per year, which continued through 2015.  In 2016, the Company experienced losses due, in part, to airline consolidation which resulted in reduced sales.  In 2017, sales were impacted by the Company's focus on the buildout of and the move of its operations to its current location.  Due to significant equipment delays, it took a full year for the new plant to be fully operational.  To leverage the new plant's capacity, in late-2018, the Company entered into a sales consulting contract to drive revenue.  The expected performance did not materialize, and Partners' revenues decreased to approximate $8 million in 2019.  Within a year after entering into the sales consulting contract, Partners returned to its own, focused, sales efforts, which resulted in increased sales.  By 2020, Partners had its highest record revenue of $11,695,030, and, in 2021, revenue is expected to be approximately $18 million.

**Reasons for Filing**

7.      Partners' secured loans with Wells Fargo mature on January 31, 2022.  In addition to its Wells Fargo debt, Partners is in default on loans from Premium Brands, which may issue a notice

DECLARATION OF CARA FIGGINS – Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dm15eh01kr

of default and exercise its remedies at any time. Partners filed this Chapter 11 so that it may continue its business and restructure the Company's debts with Wells Fargo and Premium Brands.

8. Premium Brands is a minority shareholder in Partners with two self-nominated directors on Partners' Board: George Paleologou and Stephen Bates.

9. To complicate Partners' efforts to negotiate with its lender, Wells Fargo, Premium Brands interfered directly with Partners' previously-agreed loan extension with Wells Fargo, and it intentionally frustrated Partners' efforts to pursue its restructuring efforts in a Chapter 11 case.

10. In order to restructure Partners' debt obligations and preserve the business, this Chapter 11 is essential.

## HISTORY OF PREMIUM BRANDS AND CHAPTER 11 FILING

### The Premium Brands Investment

11. As stated, from its inception until July 2017, Partners was wholly family-owned by my mother, Marian Harris, my brother Greg Maestretti as Vice President of Operations, and myself as President. In 2017, the family shareholders entered into a transaction with Premium Brands, a publicly-traded Canadian specialty food manufacturing and distribution holding company with a large portfolio of companies currently valued at more than $3.5 billion. In exchange for a $2 million investment, a Premium Brands subsidiary, 10325660 Canada, Inc. (defined in the Shareholder Agreement as "Premium Brands"), obtained a 25 percent equity ownership interest in Partners. As part of the transaction, Premium Brands and the family shareholders negotiated and executed a shareholders agreement dated July 27, 2017.

12. The Shareholders Agreement allowed Premium Brands to designate two directors and allowed the family shareholders to designate three. Premium Brands designated George Paleologou and Stephen Bates, and the family shareholders designated themselves.

DECLARATION OF CARA FIGGINS – Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dm15eh01kr

13. George Paleologou is the President, CEO and a director and shareholder of Premium Brands.  Steven Bates is a Managing Director and shareholder of Premium Brands.

14. The Shareholders Agreement required unanimous Board consent before Partners could undertake material actions including filing of bankruptcy.

**Wells Fargo Debt**

15. At the end of 2018, Wells Fargo loaned Partners approximately amount of $10.5 million pursuant to loan documents including a December 21, 2018 Credit Agreement, as amended; a December 21, 2018 Revolving Line of Credit Note in the face amount of $1,500,000 (currently replaced by an August 10, 2021 replacement Note); and an December 21, 2018 Promissory Note in the face amount of $9,000,000 (currently replaced by an August 10, 2021 replacement Note) pursuant to loan documents attached hereto as Exhibit A.  The indebtedness to Wells Fargo is secured pursuant to a Security Agreement dated December 21, 2018 granting Wells Fargo a lien in assets including accounts, general intangibles, inventory, goods, tools machinery and other equipment and UCC1 2018-365-9695-2.  The Wells Fargo debt is guaranteed by Premium Brands.

**Premium Brands Debt**

16. In 2018 and 2019 Premium Brands loaned the Debtor $3,724,712.62 pursuant to a December 21, 2018 Promissory Note in the amount of $3,024,712.62, a December 27, 2018 Promissory Note in the amount of $350,000; and a June 12, 2019 Promissory Note in the amount of $350,000, all of which are attached hereto as Exhibit B.  The promissory notes have July 1, 2020 maturity dates and contain language granting liens in assets including accounts, inventory, and equipment.  Premium Brands filed UCC-1 2019-002-01675-6 indicating all assets of the Debtor. Each of the three Promissory Notes provide for note rate interest at 10.5%, compounded monthly, and default interest at 24%, compounded monthly.

DECLARATION OF CARA FIGGINS – Page 5

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dm15eh01kr

17. Premium Brands additionally asserts unsecured claims (i) for a guarantee fee in the approximate amount of $1,620,081.50 for its guaranty of the Wells Fargo debt (discussed below); (ii) for a Consulting Fee in the amount of $540,000, which claim Partners disputes; (iii) through its affiliate ISC, Inc., for a Consulting Fee in the amount of $240,000, which claim Partners disputes; and (iv) claims based on undocumented amounts infused into the Company, which claims Partners disputes.

**Premium Brands and Wells Fargo**

18. Partners' debt to Wells Fargo is guaranteed by Premium Brands under a Continuing Guaranty. In late December 2018, the shareholders entered into an Amended and Restated Shareholder Agreement, dated December 21, 2018 which provided for payment a "Guaranty Fee" to Premium Brands by July 1, 2020 in the amount of 5%, compounded monthly of Partners' total indebtedness to Wells Fargo as compensation for Premium Brands' agreement to guaranty the Wells Fargo loan to Partners, with default interest at 24%, compounded monthly. Partners' loan documents with Wells Fargo contain cross-default provisions providing that if Partners is in default with any other lender it is also in default with Wells Fargo.

19. In December 2020, Partners sought an extension of its loans with Wells Fargo. Wells Fargo and Partners agreed to a one-year extension, but suddenly Wells Fargo reversed course after Premium Brands went behind the Company and instructed Wells Fargo to provide Partners a **shorter,** 60-day extension.

20. Premium Brand's direction to Wells Fargo to shorten the agreed loan extension originated with communications by a Premium Brand subsidiary employee, Greg Arend. Mr. Arend was working inside Partners as a consultant engaged by Partners at Premium Brand's insistence. Mr. Arend, along with Donald Chiu, Premium Brands' Finance Director, instructed Wells Fargo to

DECLARATION OF CARA FIGGINS – Page 6

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dm15eh01kr

provide a 60 day extension, rather than the already agreed one year, in order to pressure Partners with respect to Premium Brands' demands. Mr. Arend, essentially acting as Premium Brands' "double agent," then shared with Partners board members George Paleologou and Stephen Bates the emails from Mr. Chiu instructing Wells Fargo to shorten the extension. In following Premium Brand's instructions, Laura Krysko, Wells Fargo Vice President, sent the following email to Donald Chiu and Greg Arend:

> I have received three emails and two phone calls from Cara over the past couple of days and she's becoming quite frustrated. **I haven't disclosed what I've spoken to either of you about,** only that the Bank needs to be assured that the Borrower and Guarantor are on the same page before we complete the renewal. Even though the Guarantor does not sign the Amendment, the existing guarantee is continuing and therefore tied to the credit facilities. Cara has a Board Meeting at noon today and is pushing me for a response by that time.
>
> Can one of you please let me know as soon as possible what you would like to do? **I am happy to do a full year,** a 60 day extension or any option in between.

Copies of the emails between Wells Fargo and Premium Brands are attached hereto as Exhibit D.

21. For ease of reference in reviewing the emails, in addition to Partners' directors George Paleologou and Stephen Bates to whom Greg Arend forwarded the email thread, the parties to the email exchanges were:

- **Greg Arend,** as described above, an employee of a Premium Brands subsidiary, acting as consultant at Partners at the insistence of Premium Brands.

- **Laura Krysko,** Wells Fargo Bank, N.A., Vice President and Relationship Manager Commercial Banking.

- **Donald Chiu,** Treasurer and Finance Director, Premium Brands Holding Company.

| Date Time | From | To | Message Excerpt (Emphasis added) |
|---|---|---|---|
| 12/3/2020 1:02 p.m. | Greg Arend Greg.arend@partnercrackers.com | Laura Krysko Laura.A.Krysko@wellsfargo.com | As promised, I've attached Partners 2021 Projections. |

DECLARATION OF CARA FIGGINS – Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dm15eh01kr

| Date Time | From | To | Message Excerpt (Emphasis added) |
|---|---|---|---|
| 12/7/2020 9:04 a.m. | Laura Krysko Laura.A.Krysko@wellsfargo.com | Greg Arend Greg.arend@partnercrackers.com | Thanks Greg! Hope you had a great weekend. I am hoping to have documents to you for the Renewal late this week or early next week. |
| 12/14/2020 10:05 a.m. | Cara Figgins caraf@partnerscrackers.com | Laura Krysko Laura.A.Krysko@wellsfargo.com | Thank you for confirming that the loan extension has been approved! Per our conversation please write up the documents to reflect a one year extension. |
| 12/14/2020 10:26 a.m. | Laura Krysko Laura.A.Krysko@wellsfargo.com | Greg Arend Greg.arend@partnercrackers.com | Please call me when you have a moment! |
| 12/15/2020 10:26 a.m. | Greg Arend Greg.arend@partnercrackers.com | Cara Figgins caraf@partnerscrackers.com | Considering the current issues we are discussing seems more prudent to ask for a 2 month extension. |
| 12/16/2020 7:11 a.m. | Laura Krysko Laura.A.Krysko@wellsfargo.com | Donald Chiu DonaldC@pbhcorp.com Greg Arend Greg.arend@partnercrackers.com | Donald and Greg, I have received three emails and two phone calls from Cara over the past couple of days and she's becoming quite frustrated. ***I haven't disclosed what I've spoken to either of you about**, only that the Bank needs to be assured that the Borrower and Guarantor are on the same page before we complete the renewal. Even though the Guarantor does not sign the Amendment, the existing guarantee is continuing and therefore tied to the credit facilities.* Cara has a Board Meeting at noon today and is pushing me for a response by that time. Can one of you please let me know as soon as possible what you would like to do? *I am happy to do a full year,* a 60 day extension or any option in between. |
| 12/16/2020 9:40 a.m. | Donald Chiu DonaldC@pbhcorp.com | Laura Krysko Laura.A.Krysko@wellsfargo.com | I still want the 60 day extension as there are items that need to be resolved in the board meeting before we proceed with a full renewal. If pressed by Cara, you can simple let her know that as guarantor, PB needs more time to assess what's the best path for the renewal. |

DECLARATION OF CARA FIGGINS – Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dm15eh01kr

| Date Time | From | To | Message Excerpt (Emphasis added) |
|---|---|---|---|
| 12/16/2020 | Greg Arend greg@isernio.com | George Paleologou Stephen Bates | Steven and George, See email thread below. Thanks, Greg Arend |
| 12/16/2020 2:51 p.m. | Laura Krysko Laura.A.Krysko@wellsfargo.com | Donald Chiu DonaldC@pbhcorp.com Greg Arend Greg.arend@partnercrackers.com | The documents for the 60 day extension are attached. *** Please provide your agreement for me to release these to Cara for signature. |
| 12/17/2020 4:54 p.m. | Laura Krysko Laura.A.Krysko@wellsfargo.com | Donald Chiu DonaldC@pbhcorp.com Greg Arend Greg.arend@partnercrackers.com | I am hoping someone can confirm if PB is onside with me releasing the attached documents to Cara as soon as possible. |
| 12/18/2020 6:05 a.m. | George Paleologou | Greg Maestretti Tom Harris | Appointing Stephen [Bates] as interim CEO will secure PB's support for another year and will give the Company time to bring in a new investor as discussed at our board meetings. |

**Premium Brands Rejects Debt Restructure and Reserves Remedies and Collection Rights**

22.     During the course of their dealings, Partners' relationship with Premium Brands broke down.  After the family shareholders and Premium Brands were unable to reach an agreement on a debt extension, Partners failed to pay sums due to Premium Brands on July 1, 2020.  Since that time, Partners has been accruing significant default interest to Premium Brands and has been in default under its Wells Fargo lending agreement due to the cross-default provision.

23.     Premium Brands rejected Partners' proposal for a financial restructuring of debt to remove the default.  In response to Partners' proposal, Premium Brands never made any debt restructuring counter-proposal.  Instead, Premium Brands insisted on control and ownership reallocations before it would consider any forbearance or debt restructuring.  The family shareholders

DECLARATION OF CARA FIGGINS – Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

refused Premium Brands' conditions. Ultimately, in December 2020, Premium Brands withdrew from negotiations, stating that it reserved the right to collect and foreclose on its loans to Partners at any time.

**Chapter 11 As Viable Means for Debt Restructure**

24. Partners retained Bush Kornfeld LLP to advise the company as to debt restructuring options and, following several board meetings, a Chapter 11 bankruptcy was ultimately recommended as the viable path forward to protect the company. At a January 11, 2021, Board meeting, as secretary of the Board, I called for a vote on whether Partners should be authorized to proceed with filing for bankruptcy. George Paleologou and Stephen Bates, the two Premium Brands-appointed directors on the Partners' board, voted against the resolution to authorize filing a Chapter 11 bankruptcy petition. The family shareholders voted in favor of the resolution.

**The Lawsuit/Conflicted Transaction**

25. On August 12, 2021, the family shareholders, derivatively on behalf of Partners, filed a Verified Complaint against George Paleologou and Stephen Bates in <u>Figgins et al. v. Bates et al</u>, King County Superior Court Case No. 21-2-10681. After a multi-day trial, the state court entered details findings of fact and conclusions of law attached hereto as Exhibit E.

**USE OF CASH COLLATERAL**

**Use of Cash Collateral and Adequate Protection**

26. Partners requires the immediate use of the Cash Collateral of its Secured Lenders to continue uninterrupted operations for the benefit of its creditors and its estate, thereby avoiding immediate and irreparable harm to its business pending a final hearing. Partners is unable to obtain unsecured credit to fund its continued operations. It seeks to use Cash Collateral in accordance with the Budget attached as Exhibit A to the Gluckman Declaration. Without use of Cash Collateral,

DECLARATION OF CARA FIGGINS – Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dm15eh01kr

1  Partners will be unable to pay its ongoing operating expenses, including payroll, and will thus be

2  unable to continue ongoing business operations.

3        27.     The interests of the Secured Creditors will be adequately protected with an Adequate

4  Protection Lien and a senior administrative expense claim to the extent that the Adequate Protection

5  Lien is insufficient to compensate the Secured Creditors for any diminution in the value of their

6  interests as a result of Partners' use of Cash Collateral.

7        28.     The Budget provides for a Professional Fund to pay (a) the post-petition, allowed

8  fees/costs of all professionals retained in this Chapter 11 case, whether by Partners or an unsecured

9  creditors committee assuming that one will be formed; and (b) the unpaid fees due and payable to the

10  Clerk of the Court and the Office of the United States Trustee.

11       29.     Partners requires Cash Collateral to pay its ongoing operating and related expenses, as

12  it holds no unencumbered funds and does not have other sources of unencumbered funds, such that the

13  present circumstances require Partners to use of Cash Collateral in order to maintain its ongoing

14  business for the benefit of its estates and creditors.  Partners also has an immediate need to use Cash

15  Collateral to maintain, preserve and protect its assets and has provided for adequate protection of the

16  Secured Creditors' interests in the Cash Collateral.  Partners' continued, uninterrupted operations will

17  allow it to continue to maintain its valuable customer relationships.  For these reasons, Partners

18  respectfully requests the Court authorize the use of Cash Collateral pursuant to the terms of the

19  proposed Interim Order filed herewith.

20  **Wage Motion**

21       30.     The Debtor requests entry of an order authorizing the Debtor to pay prepetition wages,

22  salaries, health benefits, and other benefits which the Debtor pays to its full-time and part-time

23

DECLARATION OF CARA FIGGINS – Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dm15eh01kr

employees in the ordinary course of its business, and to continue to honor its prepetition practices, programs and policies with respect to its Employees.

31.     The Debtor currently has between approximately 106 Employees.  The Debtor has incurred costs and obligations with respect to the Employees that remain unpaid as of the Petition Date because they accrued, either in whole or in part, prior to the Petition Date.  The Debtor seeks to pay its prepetition obligations to the Employees with respect to such costs and obligations.

32.     The Debtor pays its wages and salaries of the Employees on a semi-monthly basis. The Debtor's aggregate gross payroll including benefits for all of the Employees is approximately $180,000.  Attached here as Exhibit C is a listing by employee of the gross amounts for the previous payroll.  While the pay periods may differ slightly due to hours reported, payroll-to-payroll, the total gross amounts paid are fairly consistent.  It is critical to the continuation of the Debtor's operations, and to the Debtor's smooth transition into Chapter 11, that payments to its Employees be made in a timely manner.  In light of the foregoing, the Debtor seeks authority to pay approximately its Employees for work performed prior to the Petition Date in accordance with its ordinary prepetition practices, with no Employee being owed more than $13,650 for prepetition wages.  In addition, for those Employees who do not receive a direct deposit, there may be checks issued to Employees for pay periods ending prior to the Petition Date, which have not been cleared as of the Petition Date and which the Employees will seek to cash or deposit post-petition.

33.     The Debtor sponsors several benefit plans for the Employees, including medical, dental, vision care, disability, and life insurance plans as follows: (a) generally, the Debtor pays approximately $25,000 per month pursuant to a variety of contracts with third-party insurance administrators to cover the health and welfare benefits of its Employees; and  (b) in addition to health and welfare benefit payments made directly by the Debtor, the Debtor withholds monies from the

DECLARATION OF CARA FIGGINS – Page 12

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dm15eh01kr

Employees in connection with its various benefit plans and remits such payments, together with certain payment obligations of the Debtor, to various third-party insurance administrators.

34.     Prior to the Petition Date and in the ordinary course of its business, the Debtor reimbursed Employees for expenses incurred in the scope of their employment. All of such expenses are incurred by Employees on the Debtor's behalf in connection with employment by the Debtor and in reliance upon the Debtor's reimbursement policy.

35.     The Debtor withholds from the wages of the participating Employees contributions toward their individual Simple IRA accounts. Per month, approximately $7,000 is paid into the participating Employees' Simple IRA plans including amounts attributable to payroll deferral and employer matching.

36.     The Debtor is required by law to withhold from the Employees' wages amounts related to federal income taxes, and social security and Medicare taxes and to remit the same to the appropriate taxing authorities. The Debtor is required to match from its own funds the social security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts of unemployment insurance and to remit the Payroll Taxes to the Taxing Authorities. The Debtor estimates that, on a monthly basis, it remits approximately $23,000 in Employer Payroll Taxes and approximately $23,000 in Trust Funds Taxes to the Taxing Authorities. Finally, the Debtor may withhold from the Employees' wages amounts withheld pursuant to court order, under applicable law, or otherwise which amounts are remitted to third parties in the ordinary course of the Debtor's business.

37.     The post-petition stability of the Debtor's workforce is integrally tied to the Debtor's ability to continue to honor the Prepetition Employee Obligations. Any delay in payments to Employees will impact the Debtor's relationship with essential workers and may irreparably harm

DECLARATION OF CARA FIGGINS – Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dm15eh01kr

Employee morale, dedication, confidence and cooperation. The support and efforts of the Debtor's workforce during the pendency of the Debtor's Chapter 11 case is critical to the Debtor's successful reorganization. At this early stage, the Debtor cannot risk losing the critical mass of its personnel or suffering the substantial damage to its business that would inevitably result from any decline in Employee morale.

38.     In addition, for many of the Employees, the payments received from the Debtor are needed to enable the Employees to meet their own financial obligations. As a result, absent an order granting the relief requested in this Motion, the Employees and their families are likely to suffer personal hardship and, in many instances, serious financial difficulties.

**Utilities Motion**

39.     The Debtor seeks approval of its proposed adequate assurance to its Utility Providers.

40.     Prior to the Petition Date, the Utility Providers provided utility services to the Debtor. The services provided by the Utility Providers are crucial to the continued operations of the Debtor and the Debtor may suffer irreparable harm if the relief requested is not granted by the Court. The Debtor fully intends to pay all postpetition obligations owed to the Utility Providers in a timely manner.

41.     As adequate assurance of future payment, the Debtor proposes to establish a Utility Account in the amount of $9,858 which is equal to approximately two weeks of service from all of its Utility Providers as set forth on Exhibit A to the utilities motion. The Utility Account will serve as a cash security deposit to provide the Utility Providers adequate assurance of payment for Utility Services provided to the Debtor after the Petition Date.

DECLARATION OF CARA FIGGINS – Page 14

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dm15eh01kr

42.     To the extent the Debtor fails to timely pay a Utility Provider for postpetition services, the Utility Provider may submit a payment request to the Debtor, certifying that the Debtor failed to pay for postpetition services and that such amounts are still outstanding.  The Debtor shall pay the outstanding amount within seven business days following receipt of the payment request, subject to its right to contest the payment request in this Court or any other court with jurisdiction.  Payments from the Utility Account shall be made in the order that the Debtor receives requests and the Debtor shall ensure that the Utility Account is replenished such that it remains at $9,858 or such greater amount to which the Debtor may agree or the Court may require.

**Cash Management Motion**

43.     The Debtor seeks authority to continue the use of its existing cash management system.

44.     Prior to the commencement of this Chapter 11 case, the Debtor maintained bank accounts as follows:

| Bank | Acct # | Purpose of Account |
|---|---|---|
| Wells Fargo | 1418 | Business Checking |
| Biz Exchange | 1593 | Barter Account |
| Bank of America | 3001 | Business Checking |

45.     The Biz Exchange account is associated with a barter service offered by BizX, a financial technology company that operates a digital private currency that facilitates business-to-business exchange of goods and services.  BizX was used on a limited basis by the Debtor prepetition in response to requests by certain customers.  While the BizX model allowed the Debtor to "barter" for certain goods used in various parts of its business, as of the Petition Date,  Partners is no longer accepting BizX dollars.

46.     The Debtor's Cash Management System is a vital part of its business operations.  Use of existing accounts and checks will ensure that there is a smooth transition into Chapter 11 and

DECLARATION OF CARA FIGGINS – Page 15

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dm15eh01kr

minimal disruption of the Debtor's operations. Requiring the Debtor to establish a new cash management system would cause delay and produce disruption, particularly when the Debtor is already subject to the usual operational adjustments attendant to a Chapter 11 filing.

47.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED in Seattle, Washington, this 13th day of January, 2022.

/s/ Cara Figgins
Cara Figgins

DECLARATION OF CARA FIGGINS – Page 16

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

dm15eh01kr