# EXHIBIT E

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| CARA FIGGINS, an individual; MARIAN HARRIS, an individual; and GREG MAESTRETTI, an individual, derivatively on behalf of PARTNERS, A TASTEFUL CHOICE COMPANY, a Washington corporation,<br><br>        Plaintiffs,<br>v.<br>STEPHEN BATES, an individual; and GEORGE PALEOLOGOU, an individual,<br>        Defendants,<br><br>and<br><br>PARTNERS, A TASTEFUL CHOICE COMPANY, a Washington corporation,<br>        Nominal Defendant. | No. 21-2-10681-8 SEA<br><br>Findings of Fact,<br>Conclusions of Law and Order |

STEPHEN BATES, an individual; and GEORGE PALEOLOGOU, an individual,
        Counter-Claimants,

v.

PARTNERS, A TASTEFUL CHOICE COMPANY, a Washington corporation,

        Counter-Defendant.

10325660 CANADA, INC., a Canadian corporation, for itself, and derivatively on behalf of PARTNERS, A TASTEFUL CHOICE COMPANY, a Washington corporation,

FINDINGS, CONCLUSIONS AND ORDER

|  |
|---|
| Intervenor/Cross-Claimant/Third-Party Plaintiff, |
| v. |
| CARA FIGGINS, an individual; MARIAN HARRIS, an individual; and GREG MAESTRETTI, an individual, |
| Plaintiffs, |
| and |
| TOM HARRIS, an individual, |
| Third-Party Defendant, |
| and |
| PARTNERS, A TASTEFUL CHOICE COMPANY, a Washington corporation, |
| Nominal Defendant. |

FINDINGS, CONCLUSIONS AND ORDER

THIS MATTER came on for an evidentiary hearing commencing on November 30, 2021 before the Honorable Josephine Wiggs-Martin. Plaintiffs Cara Figgins, Marian Harris, and Greg Maestretti, and Third-Party Defendant Tom Harris were represented by Gregory J. Hollon and Curtis C. Isacke of McNaul Ebel Nawrot & Helgren PLLC. Defendants Stephen Bates, George Paleologou, and 10325660 Canada, Inc. were represented by Kristin Nealey Meier and Zachary A. Cooper of Ryan, Swanson & Cleveland, PLLC.

The Court heard and considered the testimony of witnesses put forth by the parties, reviewed and considered all exhibits admitted into evidence . The Court also reviewed and considered the legal memoranda and arguments of counsel.

The Court enters the following Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

All Findings of Fact that contain Conclusions of Law shall be treated as Conclusions, and all Conclusions of Law that contain factual findings shall be treated as Findings of Fact.

1. Partners, a Tasteful Choice Company, is a Washington corporation specializing in manufacturing, warehousing, distribution, and selling of bakery products, including crackers, cookies, and other baked snacks. Partners was founded by Marian Harris, but is now run by her children, Cara Figgins and Greg Maestretti. It has approximately ninety-five to one hundred employees.

2. Plaintiff Mrs. Harris recently passed away. Prior to her death, she resided in King County, Washington with her husband, Tom Harris. Mr. Harris is the executor of his wife's estate. The estate is a shareholder of Partners. Mr. Harris is a director of Partners.

3. Plaintiff Figgins is an individual residing in King County, Washington. Figgins is a shareholder and director of Partners. Figgins is also President of Partners.

4. Plaintiff Maestretti is an individual residing in King County, Washington.

Maestretti is a shareholder and director of Partners. Maestretti is also Vice President of Partners.

5. Premium Brands is a publicly traded Canadian specialty food manufacturing and distribution holding company with a large portfolio of companies currently valued at more than $3.5 billion. Premium Brands is a significant lender for Partners and indirectly owns shares of Partners through a Premium Brands subsidiary, 10325660 Canada, Inc.

6. Defendant George Paleologou is the President, CEO, a director and .87% shareholder of Premium Brands. Paleogolou is a director of Partners.

7. Defendant Stephen Bates is a managing director and .24% owner of Premium Brands Holding Company (together with its affiliates, Premium Brands). Bates is a director of Partners.

8. Before 2017, Plaintiffs Figgins, Harris, and Maestretti were the sole shareholders of Partners.

9. In 2017, Partners needed money and was introduced to Premium Brands through a broker. Premium Brands conducted due diligence, and determined that it could bring resources, connections, and expertise to Partners to help it grow and reach its potential.

10. In 2017, Partners' three founding shareholders entered into a transaction with Premium Brands. In exchange for a $2 million investment, a Premium Brands subsidiary, 10325660 Canada, Inc., obtained a 25 percent equity ownership interest in Partners. As part of the transaction, Premium Brands and the Plaintiff Shareholders negotiated and executed a shareholders' agreement dated July 27, 2017 (as amended, the "Shareholders Agreement").

11. The Shareholders Agreement allowed Premium Brands to designate two directors and allowed the Plaintiff Shareholders to designate three. Premium Brands designated George and Stephen, and the Plaintiff Shareholders designated themselves. The

Shareholders Agreement also required unanimous Board consent before Partners could undertake material actions including (1) filing of bankruptcy; (2) entering into any contracts outside the ordinary course of business; and (3) incurring capital expenditures – on a cumulative basis – in excess of $25,000. The Shareholders Agreement also provided that upon filing bankruptcy the agreement would terminate.

12. The Shareholders Agreement also included a five-year time horizon at which point Premium Brands had the option to buy out the other shareholders. Article 6 of the Shareholders Agreement granted Premium Brands the right to purchase additional shares rendering it a 55% owner in Partners (the "Premium Brands Option"), which expired, unexercised, on July 27, 2020. Article 8 of the Shareholders Agreement grants Premium Brands the right to purchase the shares of Greg, Cara, and Marian, under certain conditions (the "Call Option"), to be exercised after July 27, 2022. The Shareholders Agreement also provided Premium Brands the right to exercise the Call Option with respect to any of the individual shareholders upon his/her death. Marian's unfortunate passing triggered the Call Option as to her shares. By July 2022, Premium Brands will have the right to buy all remaining shares and will be the sole owner of Partners.

13. At the time of the original Premium Brands investment, Premium Brands was not acting as a lender for Partners.

14. After Premium Brands' initial $2 million investment, Partners continued to struggle, and asked for more money from Premium Brands in 2018, which was provided. Since that time, Premium Brands has been Partners' primary non-bank lender.

15. Toward the end of 2018, Partners needed an extension to pay back its primary lender KeyBank, to whom it owed $10.3 million. After Figgins requested an extension, KeyBank told her they would only grant the extension if Premium Brands provided a financial guaranty. Paleologou was able to facilitate the guaranty and KeyBank agreed to extend the loan.

Findings, Conclusions and Order

16. After receiving notice that KeyBank would not further extend its line of credit, Premium Brands, leveraging its long-standing relationship with Wells Fargo, helped Partners obtain a $9 million loan and $1.5 million line of credit, both of which Premium Brands guaranteed for one year, through December 2019. Wells Fargo subsequently extended the loan and line of credit to February 2020, then to December 2020, and February 2021. The current extension runs through December 2021.

17. In late December 2018, the shareholders entered into the still-operative Partners Amended and Restated Shareholder Agreement, dated December 21, 2018 (the "Shareholder Agreement"). The Shareholder Agreement required Partners to pay a "Guaranty Fee" to Premium Brands by July 1, 2020, in the amount of 5 percent of Partners' total indebtedness to Wells Fargo as compensation for Premium Brands' agreement to guarantee the Wells Fargo loan to Partners.

18. Partners' loan documents with Wells Fargo contain "cross-default" provisions providing that if Partners is in default with any other lender it is also in default with Wells Fargo. In the event of a default with Wells Fargo, the bank has the power to freeze Partners' bank accounts and take other actions to collect amounts due and owing by executing on security provided by Partners.

19. In early June 2019, Partners once again approached Premium Brands for financial support. The support provided included governance and management conditions.

20. For various disputed reasons, the relationship between Partners and Premium Brands broke down.

21. After the Partners founding shareholders and Premium Brands were unable to reach an agreement on a debt extension, Partners failed to pay sums due to Premium Brands on July 1, 2020. Since that time, Partners has been accruing significant default interest to Premium Brands and has been in default under its Wells Fargo lending agreement due to the cross-default provision therein.

22. Premium Brands rejected Partners' proposal for a financial restructuring of the debt to remove the default. In response to Partners' proposal, Premium Brands never made any debt restructuring counter-proposal. Instead, Premium Brands insisted on control and ownership reallocations before it would consider any forbearance or debt restructuring. The Partners founding shareholders refused Premium Brands' conditions. Ultimately, in December 2020, Premium Brands withdrew from negotiations, stating that it reserved the right to collect and foreclose on its loans to Partners at any time.

23. In December 2020, Partners attempted to secure an extension of its loan with Wells Fargo. After the bank originally signaled agreement to a longer loan extension, Wells Fargo reversed course after Premium Brands instructed the bank to allow only a shorter 60-day extension to February 21, 2021. Thus, Partners was faced with apparently hostile lenders and no certainty to its financial accounts beyond February 2021.

24. Partners management retained well-respected debt restructuring counsel at the law firm of Bush Kornfeld to advise the Company and the Board regarding debt restructuring options.

25. Debt restructuring counsel attended several board meetings in December 2020 and January 2021, answering questions from Board Members and providing his advice.

26. Ultimately, debt restructuring counsel provided his recommendation to the Partners Board that Chapter 11 bankruptcy was the viable path forward to protect Company operations.

27. At a January 11, 2021, Board meeting, the secretary of the Board called for a vote on whether Partners should be authorized to proceed with filing for bankruptcy.

28. Defendants Paleologou and Bates voted against the resolution to authorize filing a Chapter 11 bankruptcy petition.

29. The other three Board members voted in favor of the bankruptcy resolution.

30. Under the Shareholder Agreement, which requires unanimous vote to file for bankruptcy, the bankruptcy resolution failed.

31. In this vote, Defendants Stephen Bates and George Paleologou did not act in good faith with a view to the best interest of Partners.

32. As a direct and proximate cause of Defendants' votes and conduct contrary to their duties, Partners is exposed to immediate foreclosure by Premium Brands and additional significant risk of foreclosure and forfeiture with Wells Fargo.

33. Due to Defendants Bates and Paleologou's votes, Partners has not been able to pursue Chapter 11 bankruptcy and continues to suffer prejudice. The company is currently facing a new maturity date of December 31, 2021 with respect to the Wells Fargo debt.

## II. CONCLUSIONS OF LAW

All Findings of Fact that contain Conclusions of Law shall be treated as Conclusions, and all Conclusions of Law that contain factual findings shall be treated as Findings of Fact.

1. Jurisdiction and venue in this Court are proper.

2. The Plaintiffs bear the burden of proving that Defendants Paleologou and Bates violated their fiduciary duties.

3. The Plaintiffs bear the burden of proving they are entitled to a declaratory judgment.

4. In general, a corporation is governed by its directors that are appointed by the shareholders. The directors have the exclusive authority to make substantive decisions as to management of the corporation's business. The directors are responsible for choosing the corporation's officers.

5. Shareholders are allowed to enter into agreements that govern the management of a corporation's business and the relationships and responsibilities of the shareholders and directors.

6. The 2017 Shareholders Agreement is a lawful agreement that controls the relationships between the shareholders and directors of Partners.

7. Officers and directors owe fiduciary duties to a corporation and its shareholders, including the duty of loyalty and the duty of good faith.

8. Defendants' votes and other related conduct was a breach of the duties of loyalty and good faith they owe to Partners.

9. The "conflicted interest transaction" provisions of RCW 23B.08.700-720 do not apply to the pending dispute because the bankruptcy vote was not seeking approval of a multilateral transaction in which Defendant Paleologou and Bates had a conflict of interest. The bankruptcy vote was a unilateral action which is not covered by the above provisions of the Washington Business Corporation Act.

### III. ORDER

Based upon the foregoing Findings of Fact and Conclusions of Law, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

Plaintiffs' sought and were granted accelerated review of their request for a Declaratory Judgment to Set Aside Conflicted Interest Votes.

Plaintiffs' Motion is DENIED.

The Court reserves all other issues relating to the pleadings in the above-referenced litigation.

IT IS SO ORDERED.

DATED this 29th day of December, 2021.

<u>Signed Electronically</u>
Honorable Josephine Wiggs-Martin
King County Superior Court

Findings, Conclusions and Order

# King County Superior Court
## Judicial Electronic Signature Page

| | |
|---|---|
| Case Number: | 21-2-10681-8 |
| Case Title: | FIGGINS ET AL vs BATES AT AL |
| Document Title: | ORDER |
| Signed By: | Josephine Wiggs-Martin |
| Date: | January 03, 2022 |

*/s/ Josephine Wiggs-Martin*

Judge: Josephine Wiggs-Martin

This document is signed in accordance with the provisions in GR 30.

| | |
|---|---|
| Certificate Hash: | 17191A54C99F1ECEBA4EF6B295DD14D9B1E02ABC |
| Certificate effective date: | 4/15/2019 8:51:22 AM |
| Certificate expiry date: | 4/15/2024 8:51:22 AM |
| Certificate Issued by: | C=US, E=kcscefiling@kingcounty.gov, OU=KCDJA, O=KCDJA, CN="Josephine Wiggs-Martin: QDbimgvS5hGLn133AFk6yQ==" |