Honorable Timothy W. Dore
Chapter 11
Hearing Date: January 21, 2022
Hearing Time: 9:30 a.m.
Hearing Location: Telephonic
Response Deadline: January 20, 2022 by 12:00 p.m.
Reply Deadline: January 20, 2022 by 6:00 p.m.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re: | In Chapter 11 Proceeding |
| PARTNERS, A TASTEFUL CHOICE COMPANY, | Case No. 22-10060-TWD |
| | **PREMIUM BRANDS' MOTION TO DISMISS** |
| Debtor. | |

## I. INTRODUCTION

Cara Figgins, Greg Maestretti, and the Estate of Marian Harris (collectively, the "**Family Shareholders**") lack corporate authority to file a bankruptcy petition on behalf of Partners, a Tasteful Choice Company ("**Partners**"). The Family Shareholders filed the bankruptcy petition for the improper purpose of terminating Partners' shareholders agreement and obstructing a pending call option for purchase of Partners' shares.

For more than a year, the shareholders and directors of Partners have been embroiled in a corporate governance dispute pertaining to Partners' management. One of the main topics of disagreement was whether Partners should file bankruptcy or whether Partners should seek alternative options to deal with its debt structure. Partners' president, Ms. Figgins, brought a bankruptcy resolution to a Board vote in January 2021. The bankruptcy resolution failed because two of Partners' directors, George Paleologou and Stephen Bates, voted against it. Following the vote, Partners' shareholders and directors attempted to work through the

PREMIUM BRANDS' MOTION TO DISMISS- 1

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4881-0209-4089.3

Case 22-10060-TWD    Doc 25    Filed 01/18/22    Ent. 01/18/22 08:44:31    Pg. 1 of 17

corporate governance issues through mediation. When mediation failed, the Family Shareholders commenced a derivative lawsuit on behalf of Partners requesting a state court order to invalidate Mr. Paleologou and Mr. Bates' votes against bankruptcy. Contrary to the Family Shareholders' framing of the state court lawsuit, the Family Shareholders lost. The state court determined that Partners' shareholders agreement is a lawful agreement requiring unanimous director consent prior to filing bankruptcy, and the state court denied the Family Shareholders' *entire* request for relief. In other words, the Family Shareholders have filed this petition in direct contravention of Partners' corporate governance documents and a state court ruling addressing the authority of Partners to file bankruptcy.

## II. STATEMENT OF RELEVANT FACTS

**A.    Partners' Corporate Governance Documents.**

Premium Brands Holding Company is a successful Canadian company that owns a broad range of leading specialty food manufacturing and distribution businesses. In 2017, Premium Brands Holding Company, through its affiliate 10325660 Canada Inc., invested $2 million in exchange for 25% of the shares of Partners. As part of the transaction, Premium Brands and the Family Shareholders negotiated and executed a shareholders agreement dated July 27, 2017. The Partners Amended and Restated Shareholders Agreement was executed December 21, 2018 (as amended, the "**Shareholders Agreement**"). Declaration of George Paleologou ("Paleologou Dec."), ¶ 2; Exs. 1 and 2.

The Shareholders Agreement allows Premium Brands to designate two directors and allows the Family Shareholders to designate three. Premium Brands designated Mr. Paleologou and Mr. Bates (together with 10325660 Canada, Inc., "**Premium Brands**"), and the Family Shareholders designated themselves.[1] Under Section 3.5.14 of the Shareholders Agreement, the

---

[1] Marian Harris later designated her husband Tom Harris as her director. He is now the executor of her estate and remains a director on the Board of Partners.

PREMIUM BRANDS' MOTION TO DISMISS- 2

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

decision to file bankruptcy requires unanimous approval of all Board directors. Paleologou Dec., ¶ 3.

Under Section 8.1 of the Shareholders Agreement, Premium Brands is entitled to exercise a call option to purchase any or all of the Family Shareholders' shares on July 27, 2022, or upon certain events, including the death of a Family Shareholder (the "**Call Option**"). On September 27, 2021, Ms. Harris passed away. On October 21, 2021, Premium Brands gave notice of its exercise of the Call Option to purchase Ms. Harris' shares pursuant to Section 8.2.3 of the Shareholders Agreement. The attorney for Ms. Harris' estate responded to the Call Option Notice claiming that the Call Option Notice was issued prematurely. Although Premium Brands disagrees that it issued the Call Option Notice prematurely, it intends to issue another Call Option Notice prior to the end of 60 days after the end of the fiscal year (which ended December 31, 2021) to avoid further dispute on that issue. The exercise of the Call Option to purchase Marian Harris' shares will result in Premium Brands becoming the 62.5% majority owner of Partners. Paleologou Dec., ¶ 4.[2]

Section 11.9 of the Shareholders Agreement provides that a bankruptcy filing shall terminate the Shareholders Agreement. Of course, Premium Brands relied upon the unanimous consent provision regarding bankruptcy when it agreed to this termination provision. It is expected that the Family Shareholders will now argue that their filing of the bankruptcy petition, in direct contradiction to the terms of the Shareholders Agreement, voids Premium Brands' exercise of the Call Option. It is also expected that the Family Shareholders will argue that Premium Brands no longer has a contractual right to appoint two directors to the Board, and that Mr. Paleologou and Mr. Bates lose all of their voting rights under Section 3.5 of the Shareholders Agreement, which includes the right to vote on a variety of important corporate decisions. Paleologou Dec., ¶ 5.

---

[2] Currently, Ms. Figgins and Mr. Maestretti each own 18.75% of Partners, the estate of Marian Harris owns 37.5% and Premium Brands owns 25%.

PREMIUM BRANDS' MOTION TO DISMISS- 3

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4881-0209-4089.3

Case 22-10060-TWD    Doc 25    Filed 01/18/22    Ent. 01/18/22 08:44:31    Pg. 3 of 17

### B. Premium Brands' Contributions to Partners.

Shortly after Premium Brands' initial $2 million investment, contrary to the due diligence disclosures provided to Premium Brands, Partners immediately needed more money. Ms. Figgins and Mr. Maestretti needed to make payroll, among other expenses, and they repeatedly approached Mr. Paleologou for financial aid. In March, April, June, August, September, October, and December of 2018, Mr. Paleologou agreed to arrange for millions of dollars in cash advances from Premium Brands Operating Limited Partnership ("**PBOLP**"), an affiliate of Premium Brands, which were wired to Partners' bank account. The total was just over $3 million.[3] These requests were surprising, as Ms. Figgins had provided optimistic sales projections but had not provided information about problems with cash flow. Paleologou Dec., ¶ 6.

By early 2018, Partners was in default under the terms of its $10.3 million loan with KeyBank, a surprising event to Mr. Paleologou and Mr. Bates given that they had not received any information during the due diligence process about problems with the KeyBank loan. KeyBank gave Partners a deadline to find a new lender to replace KeyBank or KeyBank planned to initiate foreclosure proceedings. Mr. Paleologou and Mr. Bates, *on behalf of Partners*, presented to other banks to obtain a replacement. After failing to secure another source of financing, Premium Brands helped Partners obtain a $9 million loan and $1.5 million line of credit from Wells Fargo, both of which PBOLP guaranteed for one year, through December 2019.[4] Paleologou Dec., ¶ 7.

In conjunction with Premium Brands' guaranty of the Wells Fargo line, PBOLP agreed to loan an additional $350,000 in working capital. At the end of December 2018, Partners signed working capital loan agreements for $3.025 million (to cover the 2018 advances) and the

---

[3] PBOLP made the following wire transfers to Partners in 2018: $313,000 on March 2; $900,000 on March 19; $287,000 on April 3; $130,000 on June 5, $300,000 on August 1; $330,000 on September 5; $249,985 on October 1; and $349,985 on October 31.

[4] Wells Fargo subsequently extended the loan and line of credit to February 2020, then to December 2020, and February 2021. The current extension runs through January 2022.

PREMIUM BRANDS' MOTION TO DISMISS- 4

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4881-0209-4089.3

Case 22-10060-TWD    Doc 25    Filed 01/18/22    Ent. 01/18/22 08:44:31    Pg. 4 of 17

$350,000 working capital loan. The parties also executed an amendment to the Shareholders Agreement which provided for up to $2 million in additional working capital (loans) through the end of 2019. Paleologou Dec., ¶ 7.

In June 2019, Ms. Figgins and Mr. Maestretti again sought more money for Partners. Premium Brands, concerned with the ongoing cash flow issues, agreed to another working capital loan on the condition that Ms. Figgins and Mr. Maestretti agree to some corporate oversight, including a reporting structure requiring Mr. Figgins and Mr. Maestretti to report to experienced consultants, including a financial consultant. The Board and all of the shareholders unanimously agreed to the terms of corporate oversight in a Joint Action By Unanimous Consent of the Directors and Shareholders ("**Joint Consent**"), dated June 12, 2019. Paleologou Dec., ¶ 9; Ex. 3. Although initially complying with the Joint Consent, Ms. Figgins began to take unilateral action contrary to the Joint Consent and refused to abide by its terms. Paleologou Dec., ¶ 10. The conflict between the Family Shareholders and Premium Brands has continued since then, with Ms. Figgins refusing to implement strong corporate governance or limitations on her management role. Paleologou Dec., ¶ 11.

Despite Mr. Paleologou and Mr. Bates attempting to use their experience and resources to help Partners grow and succeed, and to institute corporate governance controls on Partners, Ms. Figgins and Mr. Maestretti have resisted all of these efforts and refuse any efforts to implement appropriate governance. Mr. Paleologou and Mr. Bates have arranged for experienced consultants to guide Partners' management in an effort to prevent further mismanagement by Ms. Figgins and Mr. Maestretti. They have helped introduce Partners to various vendors, suppliers, and retailers including Trader Joes, Sam's Club, Hy Vee, Left Coast Naturals, Nature's Path, Rogers Foods Ltd., and Costco. Paleologou Dec., ¶ 12.

Partners' loans owed to Premium Brands were due for repayment on July 1, 2020. Partners did not make any payments, let alone full repayment, toward these loans. Although Partners is in default on these loans, Premium Brands has never commenced any collection

PREMIUM BRANDS' MOTION TO DISMISS- 5

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4881-0209-4089.3
Case 22-10060-TWD    Doc 25    Filed 01/18/22    Ent. 01/18/22 08:44:31    Pg. 5 of 17

action on its debt and has continuously told Partners it would work with Partners regarding a debt restructuring. Ms. Figgins' claim in her declaration that Premium Brands stopped negotiating in December 2020 is false. Instead, she continues to ignore her obligations under the Joint Consent, and the similar governance terms Premium Brands has required in order to restructure its loans. Paleologou Dec., ¶ 13.

**C.   The Family Shareholders' Attack on Premium Brands.**

On November 16, 2020, the Partners' Board of Directors held a meeting to address Partners' financial issues. As provided in the Board minutes, the Board unanimously "agreed that, for a variety of reasons, it would be in the best interests of the Company to explore additional funding and financing options outside of Wells Fargo." Paleologou Dec., ¶ 14; Ex 4. At its next meeting on November 23, 2020, the Board passed a unanimous resolution authorizing the directors to explore different sources of financing and investment to deal with Partners' financial issues. Paleologou Dec., ¶ 14; Ex 15. At no point during the November 16 or November 23 meeting did Ms. Figgins or Mr. Maestretti discuss bankruptcy. *Id*.

However, prior to the November 16th Board meeting, and unbeknownst to Mr. Paleologou and Mr. Bates, Ms. Figgins directed her personal counsel to contact Thomas Buford for *individual* advice regarding potential litigation with Premium Brands. On November 15, 2020, Thomas Buford sent Ms. Figgins and her personal counsel an email with some initial thoughts on bankruptcy.[5] In this email, Mr. Buford proposed the idea that Ms. Figgins bring a bankruptcy resolution to a vote and "force" Mr. Bates and Mr. Paleologou to vote with the express purpose of bringing fiduciary duty claims to invalidate their votes. In this same email, Mr. Buford advised that Ms. Figgins could personally benefit by a Partners' bankruptcy filing given the termination provision of the Shareholders Agreement, resulting in Premium Brands'

---

[5] The emails and work product of Bush Kornfeld were produced to Premium Brands during state court litigation. The documents are subject to a confidentiality agreement. To the extent they become relevant in this dispute, Premium Brands will seek authorization to submit the documents into evidence.

PREMIUM BRANDS' MOTION TO DISMISS- 6

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4881-0209-4089.3

Case 22-10060-TWD    Doc 25    Filed 01/18/22    Ent. 01/18/22 08:44:31    Pg. 6 of 17

inability to exercise the Call Option.[6] The contents of this email were never disclosed to Premium Brands' directors until the emails were obtained by subpoena during the state court litigation. Paleologou Dec., ¶ 15.

In December 2020, Ms. Figgins announced via email that Bush Kornfeld had been retained by Partners to pursue a Chapter 11 bankruptcy filing. On December 22, January 5, and January 11, Thomas Buford attended Board meetings to discuss the bankruptcy option. Mr. Paleologou asked Thomas Buford various questions regarding Chapter 11 and was not satisfied with the answers. Mr. Paleologou and Mr. Bates also felt ambushed by the engagement of Bush Kornfeld because it was contrary to what had been discussed at prior Board meetings and they were not asked to authorize the engagement as required under Section 3.5.4 of the Shareholders Agreement (requiring unanimous director consent prior to entering contracts outside the ordinary course). When Ms. Figgins brought the bankruptcy resolution to a vote on January 11, 2021, Mr. Paleologou and Mr. Bates voted against it because they believed bankruptcy to be a last resort and they did not think a bankruptcy filing was in Partners' best interest. Paleologou Dec., ¶ 16..

Following the bankruptcy vote, Premium Brands continued to offer various financing restructuring options, which required corporate governance structures and management oversight. Recognizing that the conflict among the parties did not appear close to resolution, Premium Brands and the Family Shareholders agreed to participate in a mediation. The parties reached an initial agreement whereby Premium Brands would purchase Ms. Harris' and Ms. Figgins' shares for $6 million, and Mr. Maestretti would remain a shareholder and VP of Operations. The settlement could not be effectuated because the Family Shareholders objected to certain due diligence requirements and due to other disagreements. Paleologou Dec., ¶ 17.

---

[6] The day before sending the email, Mr. Buford had advised Ms. Figgins and her personal counsel that he had not yet determined who his clients would be.

PREMIUM BRANDS' MOTION TO DISMISS- 7

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4881-0209-4089.3
Case 22-10060-TWD    Doc 25    Filed 01/18/22    Ent. 01/18/22 08:44:31    Pg. 7 of 17

### D. The State Court Litigation.

On August 12, 2021, after the buyout negotiation stalled, the Family Shareholders commenced a derivative action in King County Superior Court against Mr. Paleologou and Mr. Bates under cause number 21-2-10681-8 (the "**State Court Litigation**"). The Verified Complaint sought a speedy hearing on an action for declaratory judgment determining that "Defendants' votes blocking Partners from pursuing protection under federal bankruptcy law are invalid as a matter of law." Declaration of Zachary Cooper ("**Cooper Dec.**"), ¶ 3; Ex. 1.

On September 3, 2021, Judge Wiggs-Martin entered an order granting the request for speedy hearing and setting the hearing on the Family Shareholders' sole cause of action in late November. Cooper Dec., ¶ 4; Ex. 2. The parties submitted hearing briefs on November 23, 2021. Cooper Dec., ¶¶ 5-6; Exs. 3 and 4. On November 29, 2021, the Family Shareholders submitted a pocket brief. Cooper Dec., ¶ 7; Ex. 5.

The state court held a three-day evidentiary hearing commencing on November 30, 2021. The state court heard testimony from Ms. Figgins, Mr. Maestretti, Mr. Paleologou, Mr. Bates, and Bush Kornfeld attorneys Aimee Willig and Thomas Buford. The state court also heard testimony from expert witnesses John Rizzardi and Deborah Crabbe, on behalf of the Family Shareholders and Premium Brands respectively. Cooper Dec., ¶ 10. Following the hearing, on December 10, 2021, the parties submitted closing briefs. Cooper Dec., ¶¶ 8-9; Exs. 6 and 7. The state court took the matter under advisement.

As demonstrated in the above referenced legal briefing and the Family Shareholders' request for relief, the sole issue at the evidentiary hearing was whether the state court could invalidate Mr. Paleologou and Mr. Bates' votes under Washington common law *and* federal bankruptcy law. Premium Brands and its directors argued in defense that neither Washington law nor bankruptcy law provided a basis to invalidate the vote, that the Shareholders Agreement was a legally enforceable contract, and the votes against the bankruptcy resolution could not be

PREMIUM BRANDS' MOTION TO DISMISS- 8

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4881-0209-4089.3
Case 22-10060-TWD   Doc 25   Filed 01/18/22   Ent. 01/18/22 08:44:31   Pg. 8 of 17

set aside. On January 3, 2022, Judge Wiggs-Martin entered an order denying the Family Shareholders' *entire* request for relief (the "**State Court Order**"). Cooper Dec., ¶ 11; Ex. 8.

While the Family Shareholders have cherry-picked certain favorable findings in the State Court Order (findings which were not necessary to the ultimate judgment), the State Court Order also provided as follows:

Finding of Fact

> 12. The Shareholders Agreement also included a five-year time horizon at which point Premium Brands had the option to buy out the other shareholders. Article 6 of the Shareholders Agreement granted Premium Brands the right to purchase additional shares rendering it a 55% owner in Partners (the "Premium Brands Option"), which expired, unexercised, on July 27, 2020. Article 8 of the Shareholders Agreement grants Premium Brands the right to purchase the shares of Greg, Cara, and Marian, under certain conditions (the "Call Option"), to be exercised after July 27, 2022. The Shareholders Agreement also provided Premium Brands the right to exercise the Call Option with respect to any of the individual shareholders upon his/her death. Marian's unfortunate passing triggered the Call Option as to her shares. By July 2022, Premium Brands will have the right to buy all remaining shares and will be the sole owner of Partners.
>
> 13. At the time of the original Premium Brands investment, Premium Brands was not acting as a lender for Partners.
>
> 30. Under the Shareholder Agreement, which requires unanimous vote to file for bankruptcy, the bankruptcy resolution failed.

Conclusion of Law

> 6. The 2017 Shareholders Agreement is a lawful agreement that controls the relationships between the shareholders and directors of Partners.

Order

> Plaintiffs' sought and were granted accelerated review of their request for a Declaratory Judgment to Set Aside Conflicted Interest Votes. Plaintiffs' Motion is Denied.[7]

*Id.*

---

[7] While the State Court Order refers to a motion, the speedy hearing was set on the sole cause of action in the Verified Complaint, and therefore was a final judgment with respect to the Family Shareholders' entire lawsuit. The Family Shareholders have not appealed the State Court Order.

PREMIUM BRANDS' MOTION TO DISMISS- 9

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

Immediately following entry of the State Court Order, personal counsel for the Family Shareholders reached out to Premium Brands regarding a buyout, seeking $12 million to buy out the Family Shareholders' shares. Premium Brands refused the offer, agreeing that it would buy the shares for $8 million, pursuant to the company valuation agreed to at mediation. Cooper Dec., ¶ 12.

For the last several months, Mr. Paleologou has called for several special Board meetings to receive updates on Partners, as permitted under the Shareholders Agreement. Ms. Figgins has refused. Additionally, Premium Brands has attempted to facilitate a six-month extension for Partners to the Wells Fargo line of credit. Ms. Figgins has shown no interest and waited until the last possible opportunity to arrange for the latest 30-day extension. Ms. Figgins has refused to respond to messages from Wells Fargo and Premium Brands regarding the loan extension. Ms. Figgins has intentionally manufactured a financial crisis for Partners to create a legal justification for the bankruptcy filing, for the improper motive of terminating the Shareholders Agreement. Paleologou Dec., ¶ 19.

On January 3, 2022, Thomas Buford sent a memorandum to Partners advising that given the State Court Order, he felt that a Chapter 11 petition was now viable. On January 7, 2022, counsel for Premium Brands responded to Thomas Buford and expressed its disagreement that the State Court Order (which denied the Family Shareholders' sole cause of action) supported a Chapter 11 filing. Premium Brands demanded that Mr. Buford produce immediate legal authority supporting the filing, warning him he was exposing himself to sanctionable conduct. Cooper Dec., ¶ 13; Ex. 9. Bush Kornfeld did not respond and ultimately filed the bankruptcy petition on January 13, 2022.

### III. AUTHORITY

**A.  The Family Shareholders lack corporate authority to file the petition.**

"State law determines who has the authority to file a voluntary bankruptcy petition on behalf of a debtor." *In re Sino Clean Energy, Inc.*, 901 F.3d 1139, 1141 (9th Cir. 2018) (citing

PREMIUM BRANDS' MOTION TO DISMISS- 10

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4881-0209-4089.3

Case 22-10060-TWD    Doc 25    Filed 01/18/22    Ent. 01/18/22 08:44:31    Pg. 10 of 17

*Price v. Gurney*, 324 U.S. 100, 106-07 (1945)). When determining whether an entity has authority to file, bankruptcy courts look to state law and corporate governance documents. *In re The Hawaii Times Limited*, 53 B.R. 560, 561 (Bankr. D. Hawaii 1985). If the bankruptcy court determines that "those who purport to act on behalf of the corporate have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." *Price v. Gurney*, 324 U.S. at 106; *see also In re Real Homes, LLC*, 352 B.R. 221, 225 (Bankr. D. Idaho 2005) ("It is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed.").

1. <u>The Family Shareholders lack authority to file under Washington law</u>.

In Washington, agreements among shareholders regarding corporate governance are covered under RCW 23B.07.320, which provides in relevant part:

> An agreement among the shareholders of a corporation that is not contrary to public policy and that complies with this section ***<u>is effective among the shareholders and the corporation even though it is inconsistent with one or more other provisions of this title in that it</u>***:
> ….
> (d) Governs, in general or in regard to specific matters, the exercise or division of voting power by and between the shareholders and directors or by or among any of them, including use of weighted voting rights or director proxies.

RCW 23B.07.320(1)(d) (emphasis added).

Consistent with RCW 23B.07.320, the Shareholders Agreement <u>requires</u> all directors to vote on bankruptcy:

> Except as otherwise required by law or by this Agreement, questions arising at a meeting of the board of Directors shall be decided by a majority of votes. Notwithstanding the foregoing, the following matters ***must be unanimously approved by all Directors*** (except that if the executive in the case of Sections 3.5.10, 3.5.11 and 3.5.12 is a Director, then the matter shall only require the unanimous approval of the remaining Directors)

Paleologou Dec., Exs. 1 and 2 at Section 3.5 (emphasis added).

PREMIUM BRANDS' MOTION TO DISMISS- 11

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4881-0209-4089.3

Case 22-10060-TWD    Doc 25    Filed 01/18/22    Ent. 01/18/22 08:44:31    Pg. 11 of 17

The January 2021 bankruptcy resolution failed because it did not receive unanimous consent from the Partners' Board of Directors. The unanimous voting requirement, which was implemented in 2017 in connection with Premium Brands' investment, is a common place requirement in shareholders agreements. The provision was agreed upon prior to the extension of any loans by Premium Brands to Partners. The provision was also agreed upon in the 2018 Amended and Restated Shareholders Agreement. There is no public policy reason supporting invalidation of an agreement among shareholders to allocate corporate governance rights. Similarly, there is no public policy reason supporting invalidation of a shareholder call option. These are both commonplace contractual provisions used by investors to limit risk, and which as a result, help start up companies grow by fostering investment.

2. <u>The State Court Order is entitled to "full faith and credit".</u>

After considering the evidence and legal arguments from the parties, Judge Wiggs-Martin determined that the Shareholders Agreement is a lawful agreement and that under the unanimous consent provisions the bankruptcy resolution failed. This decision is entitled to "full faith and credit". 28 U.S.C. § 1738. Under the full faith and credit statute, the preclusive effect of a state court judgment is determined by applying the preclusion law of the state in which the judgment was entered. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001).

In Washington, issue preclusion applies if (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom issue preclusion is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of issue preclusion does not work an injustice on the party against whom it is applied. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 307, 96 P.3d 957 (2004). Issue preclusion is intended to prevent relitigating "one or more of the crucial issues or determinative facts determined in the previous litigation." *Id*. at 306 (citing *Luisi Truck Lines, Inc. v. Wash. Utils. & Transp. Comm'n*, 72 Wn.2d 887, 894, 435 P.2d 654 (1967). Washington courts follow the general rule that:

PREMIUM BRANDS' MOTION TO DISMISS- 12

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4881-0209-4089.3

Case 22-10060-TWD  Doc 25  Filed 01/18/22  Ent. 01/18/22 08:44:31  Pg. 12 of 17

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 262, 956 P.2d 312 (1998) (citing Restatement (Second) of Judgments sec. 27 (1982)).

The State Court Order determined various issues which were necessary to denial of the Family Shareholders' request to invalidate "conflicted votes". First, the state court determined that the Shareholders Agreement was a lawful agreement and controlled the relationship of Partners' shareholders and directors. Next, the state court determined that under the Shareholders Agreement the bankruptcy resolution failed. Unlike these determinations, which were essential to the judgment, the state court's extraneous finding that there was a breach of fiduciary duty was not essential to the judgment and is not entitled to preclusive effect.[8]

Moreover, the State Court Order should be preclusive because it involved the same parties – the directors and shareholders of Partners. The State Court Order is a valid and final judgment and there is no injustice to any party. The Family Shareholders chose to litigate the dispute in state court and had the full opportunity to do so. The Family Shareholders told Judge Wiggs-Martin during oral argument that their request for declaratory judgment was proper because her determination would be entitled to the full faith and credit of the bankruptcy court. The Family Shareholders lost, and this Court should not relitigate the dispute.

Lastly, the Family Shareholders' argument that the State Court Order was limited to a determination under the Washington Corporation Business Act ("**WCBA**") is false. In fact, the Family Shareholders conceded prior to the hearing that the statutory provisions of the WCBA did not provide a basis to authorize a bankruptcy filing and instead acknowledged that they were proceeding under Washington common law. Cooper Dec., Ex. 3 at p. 20, lns. 5-13.

---

[8] The Court should note that Mr. Paleologou and Mr. Bates vigorously disagree with those state court findings and continue to believe that their actions have been in Partners' best interest, and that the Family Shareholders themselves have breached fiduciary duties to Partners.

PREMIUM BRANDS' MOTION TO DISMISS- 13

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4881-0209-4089.3

Case 22-10060-TWD    Doc 25    Filed 01/18/22    Ent. 01/18/22 08:44:31    Pg. 13 of 17

As evidenced by the substantial legal briefing submitted by the Family Shareholders, they also relied upon federal bankruptcy law, including federal public policy arguments, to support their requested relief. *See* Cooper Dec., Ex 6 at pp. 7-8 ("And, federal bankruptcy law makes clear that challenging and invalidating conflicted 'blocking' votes is proper."); Ex. 5 at p. 14, lns. 19-24 ("For these reasons, the Court should find… votes on the bankruptcy resolution to be conflicted as a matter of black letter fiduciary law in Washington. Separately, as a matter of ***federal law***… [the] bankruptcy resolution should be stricken as contrary to federal public policy."). The state court was not persuaded and ruled in favor of Mr. Paleologou, Mr. Bates, and Premium Brands.

### 3. The Rooker-Feldman doctrine bars review of the State Court Order.

"The Rooker-Feldman doctrine bars a lower federal court, including a bankruptcy court, from reviewing a state court's final decision." *In re Hobbs*, 4:13-BK-06690-BMW, 2016 WL 5956648 at *4 (B.A.P. 9th Cir. Oct. 13, 2016) (citing *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986); *see Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923)). The doctrine is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).

In the prior litigation, the Family Shareholders brought a derivative action on behalf of Partners, asking the state court to determine *as a matter of law* that Mr. Paleologou and Mr. Bates' votes against bankruptcy were invalid. The state court denied the request and instead determined that the Shareholders Agreement was a lawful agreement under which the bankruptcy resolution failed. The Family Shareholders now ask this Court to review that decision by filing the bankruptcy petition in contravention of the State Court Order.

PREMIUM BRANDS' MOTION TO DISMISS- 14

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4881-0209-4089.3

Case 22-10060-TWD    Doc 25    Filed 01/18/22    Ent. 01/18/22 08:44:31    Pg. 14 of 17

B.   **The bankruptcy should be dismissed under 11 U.S.C. § 1112(b) for bad faith.**

The bad faith filing of a bankruptcy petition constitutes "cause" for dismissal under Section 1112(b). *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994). The inquiry focuses on the manifest purpose of the petition filing and whether the debtor "seeks to achieve objectives outside the legitimate scope of the bankruptcy laws."

Here, the bankruptcy petition was filed for the improper purpose of terminating the Shareholders Agreement and obstructing Premium Brands' exercise of the Call Option. Partners is not under threat of foreclosure or collection. The Wells Fargo maturity date has been continuously extended because of Premium Brands' guarantee. Wells Fargo will not seek collection from Partners, but rather Wells Fargo will look to Premium Brands to satisfy the guarantee obligation.[9] When this happens, Premium Brands will be the only remaining significant creditor in this case. Premium Brands is a shareholder and has never had any intention of foreclosing on Partners. However, Premium Brands will not sit idly while the Family Shareholders seek to eradicate its corporate governance rights, and Premium Brands will exercise its Call Option as allowed under the Shareholders Agreement. The bankruptcy petition is a last-ditch effort by the Family Shareholders to prevent this from happening.

///

///

---

[9] Wells Fargo has already demanded that Premium Brands pay Wells Fargo on its guaranty as a result of Partners' bankruptcy filing. Cooper Dec., ¶ 14; Ex 10.

PREMIUM BRANDS' MOTION TO DISMISS- 15

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4881-0209-4089.3

Case 22-10060-TWD    Doc 25    Filed 01/18/22    Ent. 01/18/22 08:44:31    Pg. 15 of 17

## IV. CONCLUSION

For these reasons, the Court should grant the Motion to Dismiss as a matter of law. If the Court determines that there are genuine disputes of material fact, the Court should set an evidentiary hearing.

DATED this 18th day of January, 2022.

RYAN, SWANSON & CLEVELAND, PLLC

By */s/ Joseph A.G. Sakay*
Joseph A.G. Sakay, WSBA #24667
Adam C. Doupé, WSBA #55483
Zachary A. Cooper, WSBA #53526
*Attorneys for Premium Brands*
1201 Third Avenue, Suite 3400
Seattle, Washington 98101-3034
Telephone: (206) 464-4224
Facsimile: (206) 583-0359
sakay@ryanlaw.com
doupe@ryanlaw.com
zcooper@ryanlaw.com

PREMIUM BRANDS' MOTION TO DISMISS- 16

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4881-0209-4089.3

Case 22-10060-TWD    Doc 25    Filed 01/18/22    Ent. 01/18/22 08:44:31    Pg. 16 of 17

## CERTIFICATE OF SERVICE

I, Patricia Herzog, declare that I am employed by the law firm of Ryan, Swanson & Cleveland, PLLC, that I am over 18 years of age, and not a party to this action.

On January 18th, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties who are registered ECF participants.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED this 18th day of January, 2022.

>  */s/ Patricia D. Herzog*
> Patricia D. Herzog
> Legal Assistant

PREMIUM BRANDS' MOTION TO DISMISS- 17

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

4881-0209-4089.3

Case 22-10060-TWD    Doc 25    Filed 01/18/22    Ent. 01/18/22 08:44:31    Pg. 17 of 17